Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6314 | **DATE** | 1/16/2004 |
| **CASE TITLE** | TRAVELERS CASUALTY AND SURETY CO. vs. INTERCLAIM (BERMUDA) LTD., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss for lack of personal jurisdiction [7-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JAN 21 2004 | |
| | Notified counsel by telephone. | date docketed | 10 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | |
| | Copy to judge/magistrate judge. | docketing deputy initials | |
| | | 1/16/2004 | |
| CB | courtroom deputy's initials | date mailed notice | |
| | | PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRAVELERS CASUALTY AND SURETY COMPANY, )
)
Plaintiff, )
)
v. )
)
INTERCLAIM (BERMUDA) LTD., et al. )
)
Defendants. )

No. 03 C 6314

Suzanne B. Conlon, Judge

DOCKETED
JAN 2 1 2004

## MEMORANDUM OPINION AND ORDER

In this diversity action, Travelers Casualty and Surety Co. ("Travelers") sues Interclaim (Bermuda) Ltd. ("Interclaim Bermuda"), Interclaim Recovery Ltd. ("Interclaim Recovery"), and Interclaim Holdings Ltd. ("Interclaim Holdings") for breach of contract (Count I), *quia timet* (Count II), and constructive trust (Count III). Specifically, Travelers claims that Interclaim Bermuda, Interclaim Recovery, and Interclaim Holdings (collectively, "defendants") have breached their obligations to Travelers with respect to a surety bond issued in April 1999 in connection with an injunction obtained by Interclaim Recovery and Interclaim Holdings in the province of Alberta, Canada. Defendants move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## LEGAL STANDARD

Travelers has the burden of demonstrating that this court has personal jurisdiction over defendants. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In deciding a motion to dismiss for lack of personal jurisdiction, all well-pleaded jurisdictional allegations in

1



the complaint are accepted as true unless controverted by affidavit. *Willard v. Ingersoll-Rand Co.*, No. 03 C 4665, 2003 WL 22175582 (N.D.Ill. 2003). Any conflicts in affidavits or pleadings must be resolved in Travelers' favor, but the court accepts as true any unrefuted facts offered by defendants. *Interlease Aviation Investors II (Aloha) L.L.C., et al. v. Vanguard Airlines*, Inc., 262 F.Supp.2d 898, 905 (N.D.Ill. 2003).

## BACKGROUND

Travelers is a Connecticut corporation with its principal place of business in Hartford, Connecticut. Compl. ¶ 3. Interclaim Bermuda is a Bermuda corporation with its principal place of business in Bermuda. Compl. ¶ 2; Cohen Decl. ¶ 2. Interclaim Recovery and Interclaim Holdings, wholly owned subsidiaries of Interclaim Bermuda, are Irish corporations with their principal places of business in Ireland. Compl. ¶ 2; Cohen Decl. ¶¶ 1,6. Interclaim Bermuda is merely a holding company. Cohen Decl. ¶ 6. The business of defendants is to acquire and enforce multi-jurisdictional claims of injured parties. Compl. ¶ 4. "Interclaim acquires title to a liquidated claim or debt by paying its owner cash or a contingent amount payable upon successful enforcement of the claim." Pl. Resp. Ex. 1 ¶ 8.

### I. Canadian Litigation

In late 1998 and early 1999, Interclaim Recovery and Interclaim Holdings commenced lawsuits in British Columbia and Alberta, Canada on behalf of individuals purportedly victimized by James Blair Down and others (hereinafter "Down" or "Down group") in connection with an illegal mass mail solicitation and telemarketing operation revolving around certain games of chance and sweepstakes. Compl. ¶ 8-9. In order to do so, Interclaim Holdings

2

had obtained power of attorney agreements from sixteen alleged victims of the Down Group and purchased trade debt owed by the Down group to a data processing and mass mailing company, a printing company, and a telephone company that revealed the identity of 418,256 more alleged victims. Pl.'s Resp. Ex. 1 ¶¶ 10-11. The British Columbia proceedings sought to force the Down group into involuntary bankruptcy, while the Alberta proceedings asserted a "representative proceeding" (i.e., class action) to recover damages resulting from the Down group's malfeasance. Compl. ¶ 13; Pl. Resp. Ex. 1 ¶¶ 12-13. As part of the Alberta proceedings, Interclaim Recovery and Interclaim Holdings sought an injunction freezing certain assets, including Down's, and were required to post a bond to cover any damages and costs arising from the injunction. Compl. ¶¶ 10-11. From Ireland, defendants negotiated for the issuance of the bond in the amount of $3,000,000 (Canadian) with Federation Insurance Company of Canada ("Federation"). Cohen Decl. ¶¶ 12-13; Compl ¶ 15. Travelers is the successor surety on the bond. Cohen Decl. ¶12; Compl. ¶ 15.

In exchange for the surety bond, an indemnity agreement was executed by Martin S. Kenney as President and CEO of "Interclaim Recovery Ltd." and by Martin S. Kenney as President, CEO and Director of "Interclaim (Bermuda) Ltd. and Subsidiaries." Compl. ¶ 16; Compl. Ex. 2. Travelers is also the successor indemnitee under the indemnity agreement. Compl. ¶ 16. Among other things, the indemnity agreement required defendants to exonerate and indemnify the surety. Compl. ¶¶ 16-17. The indemnity agreement is governed by Irish law. Compl. Ex. 2.

Interclaim Recovery and Interclaim Holdings fared poorly in the Canadian proceedings. In August 1999, the British Columbia bankruptcy proceedings were dismissed on the basis that

the power of attorney and trade debt purchase agreements purportedly violated the English common law doctrine against champerty.[1] Pl.'s Resp. Ex. 1 ¶ 16. Then, in November 1999, the Alberta court struck the class action portion of the representative proceeding on the basis that Alberta lacks a class action procedure and awarded costs to Down and another group of defendants ("Renoir Group"). Compl. ¶ 18; Pl.'s Resp. Ex. 1 ¶ 17. According to Travelers, the Renoir Group has recently indicated that it intends to collect damages and costs against the surety bond. Compl. ¶ 18-21.

## II.    Madison County, Illinois Litigation

As a result of the adverse rulings in the Canadian litigation, Interclaim Recovery and Interclaim Holding decided to commence a class action in the United States against Down and others. Compl. ¶ 34; Pl.'s Resp. Ex. ¶ 18. The "goal" of Interclaim Recovery and Interclaim Holdings was to obtain a favorable judgment that could then be filed as an enforceable debt in the British Columbia bankruptcy proceeding, thereby facilitating the liquidation of Down's assets for purposes of obtaining funds for the victim class in the United States action. Pl.'s Resp. Ex. 1 ¶ 18. To execute this plan, Interclaim Recovery and Interclaim Holdings retained Ness, Motley, Loadholt, Richardson & Poole ("Ness Motley"), a law firm incorporated and principally doing business in South Carolina. Compl. ¶¶ 2, 34; Pl.'s Resp. Ex. 1 ¶ 19. Ness Motley selected the Circuit Court of Madison County, Illinois for the class action (hereinafter, the Madison County litigation). Pl.'s Resp. Ex. 1 ¶ 20. Interclaim Recovery, Interclaim Holdings, and Ness Motley entered into a retainer agreement that, among other things, required Ness Motley to

---

[1]Although this decision was ultimately reversed on appeal in January 2001, "the immediate effect was to jeopardize the likelihood of recovering illegally obtained monies from the Down group." Pl.'s Resp. Ex. 1 ¶16.

4

maintain the confidentiality of any materials provided and to review all filings with counsel for Interclaim Recovery and Interclaim Holding prior to filing. Pl.'s Resp. Ex. 1 ¶¶ 19, 21.

On March 10, 2000, Ness Motley filed a class action complaint in the Madison County litigation, Case No. 00 C 223, styled as *Schuppert, et al. v. James Blair Down, et al.* The complaint named Down and others as defendants, and alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. Pl.'s Resp. Ex. 1 ¶ 26, Ex. 1 C ¶¶ 7-16. Interclaim Recovery and Interclaim Holdings assisted with the prosecution by providing Ness Motley with substantial information and documents and by sending representatives to Illinois to meet with Ness Motley lawyers, prepare for hearings, and entertain settlement discussions. Pl.'s Resp. Ex. 1 ¶¶ 20-20-21, 27, 31. None of the defendants, however, were ever parties to the Madison County litigation. Cohen Decl. ¶ 16; Pl's Resp. at p. 3. In August and September 2000, Ness Motley negotiated a settlement that "expressly excluded [Interclaim Recovery and Interclaim Holdings] from receiving any portion of the settlement and from receiving any information about the settlement discussions" and withdrew as their counsel. Compl. ¶ 35.

### III. Northern District of Illinois litigation

After the withdrawal, Interclaim Recovery and Interclaim Holdings filed a complaint against Ness Motley in the United States District Court for the Northern District of Illinois in December 2000 for, among other things, breach of contractual and fiduciary duties, Case No. 00 C 7620, styled as *Interclaim Holdings Ltd., et al. v. Ness, Motley, Loadholt, Richardson & Poole* (hereinafter, the "Northern District of Illinois litigation"). Compl. ¶ 36. In July 2003, Interclaim Recovery and Interclaim Holding were awarded $8.3 million in compensatory damages and $27.7 million in punitive damages in a jury verdict. Compl. ¶ 37. Ness Motley placed $9.6

million in an escrow account in Illinois as security for post-trial briefs and appeal. Def. Mot. at p. 2; Def. Mot. Ex. B. Interclaim Recovery and Interclaim Holding are the beneficiaries; however, the account is only payable upon successful final outcome of all appeals.[2] Def. Mot. Ex. B.

## IV.     The Present Litigation

While simultaneously pursuing the Northern District of Illinois litigation in December 2000, Interclaim Recovery and Interclaim Holdings representatives repeatedly contacted Travelers to request that it assume responsibility for the legal fees in the Alberta, Canada proceedings. Compl. ¶¶ 23-28. It was suggested that Travelers do so to protect its exposure to claims on the surety bond, as Interclaim Recovery and Interclaim Holdings would not "defend any claim for costs or damages arising from the injunction" or "pay any such costs or damages." Compl. ¶¶ 23-28. Travelers declined. Compl. ¶ 26. Since then, Travelers has repeatedly demanded that defendants "indemnify and exonerate [it] from any and all liability under the Bond and that [defendants] procure the discharge of [it] from the Bond." Compl. ¶ 29. Defendants have failed to do so. Compl. ¶ 30.

As a result, Travelers brought suit against defendants for breach of contract, *quia timet*, and constructive trust, in part to prevent defendants from receiving payment of the jury award in the Northern District of Illinois litigation without satisfying their obligations under the common law of surety and the written indemnity agreement. Compl. ¶ 1.

---

[2] On the day after Travelers filed its response to defendants' motion to dismiss, Ness Motley's motion for a new trial, judgment as a matter of law and for a remittitur were denied by Judge Rebecca R. Pallmeyer. *Interclaim Holdings Ltd. v. Ness, Motley, Loadholt, Richardson & Poole*, No. 00 C 7620 (N.D. Ill. Jan. 8, 2004).

# DISCUSSION

## I. Personal Jurisdiction

Defendants contend this court lacks personal jurisdiction over them. A federal district court sitting in Illinois in a diversity case may assert personal jurisdiction if appropriate under the forum state's law. *RAR, Inc.,* 107 F.3d at 1275. Illinois authorizes personal jurisdiction on any basis permitted by the Illinois Constitution and the United States Constitution. *Id.* at 1277. The Illinois Supreme Court has noted that federal law may be used as guidance for construction of the Illinois due process clause. *Lewis v. Spagnolo,* 186 Ill.2d 198, 227, 710 N.E.2d 798, 812 (1999). Absent any authority supporting a broader construction, the Illinois due process clause may be interpreted the same as the federal due process clause. *Id.* Consequently, the court confines jurisdictional analysis to whether federal due process permits jurisdiction over defendants.

Federal due process requires defendants to have "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Defendants may be subject to either general or specific jurisdiction under Illinois law.

## A. General Jurisdiction

General jurisdiction is appropriate only where defendants have "continuous and systematic general business contacts" with Illinois. *RAR, Inc.,* 107 F.3d at 1277 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984)). Those contacts must be so extensive as to make it "fundamentally fair to require [defendants] to answer in any [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Foundation v. Sanofi-Synthelabo S.A.,* 338 F.3d 773,

787 (7th Cir. 2003). In determining whether general jurisdiction exists, courts examine the following factors: (1) the extent to which defendants conduct business in Illinois; (2) whether defendants maintain offices or employees in Illinois; (3) whether defendants send agents into Illinois to conduct business; (4) whether defendants advertise or solicit business in Illinois; and (5) whether defendants have designated an agent for service of process in Illinois. *Interlease Aviation Investors II (Aloha) L.L.C.*, 262 F.Supp.2d at 906-07.

Defendants are foreign corporations with foreign principal places of business. Defendants have no offices, employees, or real property in Illinois. Defendants have not advertised or solicited business in Illinois. Nor have defendants designated an agent for service of process in Illinois. It is undisputed that the only contacts Interclaim Recovery and Interclaim Holdings have with Illinois are the Madison County and the Northern District of Illinois litigation, and the contingent beneficial interest held in the Northern District of Illinois litigation escrow account. It is also undisputed that Interclaim Bermuda did not participate in either the Madison County or the Northern District of Illinois litigation.

Nevertheless, Travelers argues that general jurisdiction exists because Interclaim Recovery and Interclaim Holdings are doing business in Illinois. Specifically, Travelers claims that jurisdiction is proper because Interclaim Recovery and Interclaim Holdings have conducted their champerty and maintenance business – the business of acquiring and prosecuting the legal claims of third parties – in Illinois *over an extended period of time* by facilitating and supporting a class action on behalf of Down's purported victims in Madison County. In so doing, Travelers points to the actions of Interclaim Recovery and Interclaim Holdings in hiring Ness Motley as legal counsel, providing Ness Motley with substantial legal and factual materials to assist in

prosecuting the class action, reserving the right to approve all legal filings prepared for the class action, and sending representatives to Illinois to meet with Ness Motley lawyers, prepare for hearings and discuss the possibility of settlement. Travelers' argument is unpersuasive. The materials submitted show that the participation of Interclaim Recovery and Interclaim Holdings in the Madison County litigation was limited to – at most – a nine month period, ending in September 2000. Pl. Resp. Ex. 1 ¶¶ 19, 38-42. Such limited contacts do not warrant a finding of general jurisdiction sufficient to require Interclaim Recovery and Interclaim Holdings to come to Illinois courts -- more than three years later – to answer "*any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Foundation*, 338 F.3d at 787.

Travelers cannot rely on the subsequent lawsuit of Interclaim Recovery and Interclaim Holdings against Ness Motley in the Northern District of Illinois as proof that defendants were engaging in champerty and maintenance business in Illinois. Simply put, the Northern District of Illinois litigation had nothing to do with champerty and maintenance. Instead, the Northern District of Illinois litigation was a lawsuit in which Interclaim Recovery and Interclaim Holdings sought to recover damages sustained when Ness Motley breached its fiduciary and contractual duties to them in August and September 2000. Defendants rely on an eighty-seven year old case, *In re Indiana Transportation Co.*, 244 U.S. 456, 458 (1917), for the proposition that the court does not have

> any power in fact over the defendant unless it can seize him again, it cannot introduce new claims of new claimants into an existing suit simply because the defendant appeared in that suit. The new claimants are strangers and must begin their action by service just as if no one had sued the defendant before.

9

Travelers, on the other hand, has not carried its burden by providing any authority whatsoever for the dubious proposition that general jurisdiction may be asserted on the basis of involvement in an unrelated lawsuit. The court is unpersuaded that the prosecution of the Northern District of Illinois litigation by Interclaim Recovery and Interclaim Holdings constitutes "doing business" in Illinois. Cf. *Scheidler v. National Organization for Women, Inc.*, 739 F.Supp. 1210 (N.D.Ill. 1990) ("it is unclear to this court whether filing court papers and making court appearances in a case would ever constitute the 'transacting of business' for purposes of the Illinois long-arm statute"); *Pressed Radiator Co. v. Hughes*, 1910 WL 1933 (Ill. App. Ct. 1910) (maintenance of lawsuit in Illinois court did not constitute "doing business" or "transacting business" for purposes of statute regulating foreign corporations); *Payton v. Summit Loans, Inc.*, 253 A.2d 459, 461 (D.C. 1969) ("the initiation of an action by a foreign corporation does not in and of itself constitute doing business in the jurisdiction where suit is brought"); 19 C.J.S. *Corporations* § 942 (2003) ("[a] corporation is not necessarily doing business in the state merely because it . . . initiates litigation in the state.").

Because the court has determined that insufficient grounds exist to assert general jurisdiction over Interclaim Recovery and Interclaim Holdings, it need not reach the issue of whether sufficient grounds exist to assert general jurisdiction over Interclaim Bermuda, their parent company. Travelers does not refute Interclaim Bermuda's lack of contacts with Illinois. Instead, Travelers advances the untenable argument that the jurisdictional contacts of Interclaim Recovery and Interclaim Holdings are attributable to Interclaim Bermuda by virtue of its control over its subsidiaries. *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (personal jurisdiction cannot be asserted

on the sole basis of corporate affiliation or stock ownership where there is substantial observance of corporate formalities and the parent does not exert *an unusually high degree of control* over the subsidiary). Because this court has determined that the jurisdictional contacts of Interclaim Recovery and Interclaim Holdings are insufficient, any contacts attributed to Interclaim Bermuda are also necessarily insufficient. Accordingly, there is no need to examine the degree of control Interclaim Bermuda exerts over Interclaim Recovery and Interclaim Holdings.

**B.    Specific Jurisdiction**

Travelers contends that the court has specific jurisdiction over Interclaim Recovery and Interclaim Holdings because its claims arise from their contacts with Illinois. To establish specific jurisdiction, Travelers must establish that Interclaim Recovery and Interclaim Holdings purposefully established minimum contacts with Illinois. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). In determining whether sufficient minimum contacts exist, courts evaluate whether a defendant could "reasonably anticipate being haled into court" in Illinois. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980). These contacts may not be fortuitous or attenuated. Rather, this standard is satisfied when defendants purposefully direct their activities at Illinois and the litigation arises from injuries caused by those activities. *Burger King Corp.*, 471 U.S. at 474.

The Seventh Circuit has explained that the causal connection between litigation and defendants' contacts with Illinois must be close enough to comport with fair play and substantial justice. *RAR, Inc.*, 107 F.3d at 1278. Defendants' contacts with Illinois are not merely aggregated to determine evidence of the constitutionally-required minimum contacts. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712-13 (7th Cir. 2002). Instead, "[t]he action must *directly arise*

11

out of the specific contacts between the defendant and the forum state." *RAR, Inc.*, 107 F.3d at 1277 (citing *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995) (emphasis added)). In a contract case, nothing is relevant to the minimum contacts analysis except "the dealings between the parties in regard to the disputed contract." *RAR, Inc.*, 107 F.3d at 1278; *Hyatt Int'l Corp.*, 302 F.3d at 717.

Travelers has failed to offer sufficient facts related to the surety bond that demonstrate Interclaim Recovery and Interclaim Holdings purposefully directed their activities toward Illinois, and that those same activities give rise to this lawsuit. Indeed, the jurisdictional allegations on which Travelers relies are not related at all to the surety bond. This particular action – involving Travelers' allegations of breach of contract and common law surety rights – does not arise out of any facts involving Interclaim Recovery and Interclaim Holdings' contacts with Madison County or the Northern District of Illinois. Instead, this action arises out of the conduct of Interclaim Recovery and Interclaim Holdings with respect to the surety bond in Alberta, Canada. No event in either the Madison County or the Northern District of Illinois litigation caused Interclaim Recovery and Interclaim Holdings to fail to abide by the indemnity agreement governing the surety bond. Nor is Travelers' assertion convincing that personal jurisdiction exists because the Madison County litigation is part and parcel of the Canadian litigation. The fact that Interclaim Recovery and Interclaim Holdings intended the Madison County litigation to result in a judgment that could then be used as an enforceable debt in the British Columbia bankruptcy proceeding is irrelevant. The surety bond was issued for the Alberta, Canada lawsuit, not the British Columbia, Canada bankruptcy case. Travelers has not connected the Madison County litigation to the Alberta, Canada surety bond. Accordingly,

the court finds that Travelers has not satisfied its burden to establish specific jurisdiction over Interclaim Recovery or Interclaim Holdings.

For the reasons explained above, Travelers' argument that specific jurisdiction exists over Interclaim Bermuda due to its control of its subsidiaries is rejected. *Central States, Southeast and Southwest Areas Pension Fund*, 230 F.3d at 943. The argument fails in light of Travelers' inability to establish sufficient jurisdictional contacts with respect to Interclaim Recovery and Interclaim Holdings.

The court does not accept Travelers' dire prediction that failure to assert personal jurisdiction over defendants in this case means that defendants "would never be subject to personal jurisdiction in any U.S. court." Pl.'s Resp. at p.10. United States courts may assert personal jurisdiction over foreign defendants to the extent allowable by law, provided the action arises out of the foreign defendants' contacts with the forum state. Here, the surety bond was negotiated and issued abroad between Canadian and Irish parties for purposes of Canadian litigation. There is no sound basis for this court's jurisdiction over foreign parties where the claims arise out of foreign transactions with no nexus to Illinois.

## II. Quasi-in-rem jurisdiction

To assert quasi-in-rem jurisdiction, the *res* must be present in the jurisdiction and federal and Illinois due process requirements must be satisfied. *Shaffer v. Heitner*, 433 U.S. 186 (1977). Because the constitutional requirements of minimum contacts under *International Shoe* and its progeny are not met, Travelers' contention that quasi-in-rem jurisdiction exists must also fail.

## CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction is granted.

January 16, 2004

ENTER:

Suzanne B. Conlon
United States District Judge